Jared F. Kiess
BULLIVANT HOUSER BAILEY PC
925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
jared.kiess@bullivant.com
Telephone: 206.292.8930
Facsimile: 206.386.5130

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>THE CENTER FOR ASBESTOS RELATED DISEASE, INC, and BNSF RAILWAY COMPANY,<br><br>    Defendants. | No.:<br><br>COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Ohio Security Insurance Company brings this Complaint for Declaratory Judgment against Defendants The Center for Asbestos Related Disease, Inc. and BNSF Railway Company.

## I. THE PARTIES

1. Plaintiff Ohio Security Insurance Company ("Ohio") is company organized under the laws of the State of New Hampshire with its principal place of business located at 175 Berkeley St., Boston, Massachusetts, 02116.

2. Defendant The Center for Asbestos Related Disease, Inc. ("CARD") is a Montana Non-Profit Corporation with its principal place of business located at 214 East 3rd Street, Libby, Montana 59923.

3. Defendant BNSF Railway Company ("BNSF") is a Delaware Corporation with its principal place of business located at 2650 Lou Menk Drive, Fort Worth, Texas 76131.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Ohio is a citizen of a different state than both Defendants.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the cause of action occurred in this judicial district.

## III. FACTS

6. Ohio incorporates by reference all allegations set forth in paragraphs 1 through 5 as if fully set forth herein.

**A.   The Policies**

7. Ohio issued commercial package insurance policies to an entity or entities designated as "CARD, Inc." and later "The Centers for Asbestos Related Disease, Inc." for an initial policy period incepting on May 27, 2011 and renewed annually for successive policy periods through the policy period ending on May 27, 2022 bearing policy number BKS 54 76 03 78 (the "Policies"). Copies of Policy Nos. BKS (12) 54 76 03 78, BKS (14) 54 76 03 78, BKS (15) 54 76 03 78, and BKS (18) 54 76 03 78 are attached as Exhibits "A" through "D" respectively. As relevant to this action, with the exception of the policy period, policies issued for periods May 27, 2012 through May 27, 2013 are substantively identical to Exhibit A,

policies issued for periods from May 27, 2015 through May 27, 2017 are substantively identical to Exhibit C, and policies issued for periods from May 27, 2018 through May 27, 2022 are substantively identical to Exhibit "D."

8. Policies incepting on May 27, 2011 through the policy period ending on May 27, 2017 are issued to "CARD, Inc." Policies incepting on May 27, 2017 through the policy period ending on May 27, 2022 are issued to "The Centers for Asbestos Related Disease, Inc." On information and belief, Ohio alleges that there is no entity by the name of "CARD, Inc." authorized to conduct business in the State of Montana. For convenience, and without waiving any rights under the Policies or applicable law, Ohio will refer to both "CARD, Inc." and "The Centers for Asbestos Related Disease, Inc." as "CARD" throughout this Complaint.

9. The Policies each contain a Commercial General Liability Coverage Form that contains various coverage parts. Subject to various terms, conditions, exclusions, and limitations, "Coverage A" affords coverage for "bodily injury" and "property damage" caused by an "occurrence." The Policies also contain various endorsements that limit or modify the coverage afforded by the Commercial General Liability Coverage Form, including an endorsement providing that "Coverage B," Personal and Advertising Injury Liability, "does not apply and none of the references to it in the Coverage Part apply."

B.   **The Underlying Action**

10. In 2019, Defendant BNSF, as *qui tam* relator, filed a civil lawsuit on behalf of the United States of America and itself against CARD in the United States District Court for the District of Montana as Civil Action No. CV-19-40-M-DLC (the "Underlying Action"). BNSF subsequently filed a Second Amended Complaint and Jury Demand in the Underlying Action on February 18, 2021 (the "Complaint"), a copy of which is attached as Exhibit "E". In the Complaint, BNSF seeks monetary

compensation on behalf of the United States government and itself for alleged violations of the False Claims Act, 31 U.S.C. § 3729.

11.     The basis for the alleged False Claims Act violations arises out of CARD's role in screening and diagnosing patients with Asbestos Related Disease ("ARD") from exposure to asbestos in and around Libby, Lincoln County, Montana. W.R. Grace & Co. mined and milled vermiculite ore from the Zonolite Mountain Mine near Libby from the late 1920's to 1990. The vermiculite was later determined to have been contaminated with amphibole asbestos.

12.     The Complaint alleges that increased awareness of asbestos exposure from the mine surfaced in 1999, resulting in the formation of CARD in 2000. Originally a department of St. John's Lutheran Hospital, CARD became its own organization in April 2003 with the mission of providing "comprehensive asbestos health screening" for people in Lincoln County. Since its inception, the Complaint alleges, CARD has screened thousands of patients for the presence of ARD.

13.     According to the Complaint, CARD receives federal funds from various sources. CARD's primary funding source is allegedly federal grant monies administered by the American Toxic Substances Disease Registry ("ATSDR") and the Centers for Disease Control ("CDC"). The Complaint alleges that CARD has received approximately $2.4 million annually in primary screening grant awards for a total of over $20 million. BNSF asserts that a condition of the grant is that all radiologic exams will be sent for outside reads to a panel of expert B-readers and radiologists.

14.     In addition to the ATSDR and CDC grants, the Complaint alleges that CARD receives federal Medicare funds. In 2011, a part of the Affordable Care Act created a "Medicare Pilot Program for Asbestos Related Disease" which provides comprehensive care for individuals diagnosed with a qualifying asbestos related

condition, including services not normally covered under Medicare, for residents in Lincoln and Flathead Counties.

15. BNSF alleges that in order to qualify for Medicare coverage, a patient must receive a diagnosis of a qualifying impairment, two of which are "Asbestosis" and "Pleural Thickening/Pleural Plaques." According to BNSF, federal law requires that a diagnosis of either Asbestosis or Pleural Thickening/Pleural Plaques must be based on interpretation by a "qualified physician" of a chest x-ray or CT radiograph. The Complaint alleges that a qualified physician is one who performs the scans in conformity with accepted medical standards of care and the American Thoracic Society guidelines.

16. According to BNSF, CARD has certified thousands of patients for Medicare coverage based on a novel diagnosis of "Lamellar Pleural Thickening" developed by CARD's Chief Executive Officer and Medical Director Dr. Brad Black. According to BNSF, "Lamellar Pleural Thickening" is not a diagnosis listed in any peer-reviewed studies, has "virtually no identifiable diagnostic criteria, and is "not commonly recognized by the medical community." BNSF further alleges that Dr. Black and CARD have claimed this condition is "unique to Libby Asbestos exposure," is "not readily apparent" to the "untrained eye," and that often only Dr. Black is capable of detecting it.

17. BNSF claims that CARD has artificially inflated the number of ARD cases based, at least in part, on this novel diagnosis. CARD allegedly does not regularly employ a radiologist, a Certified B Reader or a pulmonologist at its Libby facility, and Dr. Black is not such a specialist. Nevertheless, the Complaint alleges that CARD routinely diagnoses patients with ARD before an x-ray or CT scan is interpreted by qualified outside radiologists and stands by its diagnosis "even in cases in which each of these qualified radiologists' interpretive reports unanimously

show no findings of asbestos related disease."

18. The Complaint alleges that CARD is aware of this "stark differential" in diagnoses. CARD allegedly maintains a master data set as part of its federal grant requirement that shows a differential of at least 22 to 29 percentage points between the diagnosis rate of its physicians and those of outside physicians. Based on these figures, the Complaint alleges that CARD has certified "close to one thousand patients" as "Medicare eligible when those patients showed no signs of any abnormalities on CT scan according to qualified radiologists."

19. The Complaint alleges that CARD's conduct constitutes false claims for payment in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1). The Complaint alleges that CARD made material representations in grant applications that were "false, misleading and showed deliberate ignorance of, or reckless disregard for the truth." The Complaint alleges that CARD knowingly made these misrepresentations "in order to increase its chances of winning and maintaining CARD's federal grant awards."

20. In addition, by diagnosing patients with ARD prior to the completion of an interpretation by an outside physician, the Complaint alleges that CARD effectively rendered those outside physicians' interpretations medically unnecessary. The Complaint further alleges that CARD submitted false claims for Medicare and Social Security Disability payments as a result of its practices.

21. The Complaint contains three counts, each predicated on violations of the various subsections of 31 U.S.C. § 3729(a)(1): specifically, subsections (a)(1)(A); (a)(1)(B); and (a)(1)(G). Each count alleges that CARD acted "knowingly," which the Complaint defines as acting with "actual knowledge of the information," in "deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information." The Complaint

seeks recovery in the form of actual damages, civil penalties, monetary penalties, attorney's fees, costs, and interest.

**C.     The Insurance Claim**

22.    CARD tendered the Underlying Action to Ohio for defense and indemnity coverage under the Policies.

23.    Ohio promptly acknowledged the tender in a letter sent on May 7, 2021, a copy of which is attached as Exhibit "F". In that letter, Ohio informed CARD that it was investigating potential coverage under the Policies, but fully reserved all rights.

24.    In a letter dated and sent on July 1, 2021, Ohio informed CARD that it would provide a defense under a reservation of rights, but that it believed the Policies did not afford coverage for the claims and damages alleged in the Complaint. A copy of the July 1, 2021 letter is attached as Exhibit "G". In the July 1, 2021 letter, Ohio fully reserved all rights, including the right to file a declaratory judgment action to contest coverage, withdraw from the defense, and seek an order allowing it to obtain reimbursement or recoupment of defense costs incurred in defending CARD under a reservation of rights.

## IV. FIRST CAUSE OF ACTION

### Declaratory Judgment – Coverage

25.    Ohio incorporates by reference all allegations set forth in paragraphs 1 through 24 as if fully set forth herein.

26.    The Policies constitute binding and enforceable contracts setting forth the rights and obligations of the parties.

27.    Pursuant to the express terms, conditions, exclusions, and limitations of the Policies, there is no liability coverage available to CARD for the claims and damages alleged in the Complaint.

28. The allegations in the Complaint do not trigger the insuring agreement of the Policies. In relevant part, the insuring agreement of Coverage A of the Policies affords coverage only for "sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' … caused by an 'occurrence.'"

29. The Complaint does not seek to recover from CARD for damages because of "bodily injury" as the Policies define that term. The Policies define "bodily injury" to mean, in relevant part, "physical injury, sickness or disease sustained by a person." The Complaint seeks recovery of monetary amounts received by CARD from grant proceeds, Medicare, Social Security, and other government benefits as a result of allegedly false claims for payment as well as civil penalties and attorney's fees. These injuries are purely economic in nature and cannot constitute "physical injury, sickness or disease."

30. The Complaint also does not seek to recover from CARD for damages because of "property damage" as the Policies define that term. The Policies define "property damage" to mean, in relevant part, "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." The monetary amounts for which the complaint seeks recovery are based on harm to the government's economic interest and not as a result of physical injury to, or loss of use of, any "tangible property."

31. In addition, the conduct that allegedly caused the injuries described in the Complaint does not constitute an "occurrence" as the Policies define that term. The Policies define "occurrence" to mean, in relevant part, an "accident." The Complaint alleges that CARD acted "knowingly" in presenting the allegedly false claims for payment and knowingly made false representations on its grant applications for the purpose of increasing its chances of winning and maintaining

federal funds.  Since the injuries alleged in the Complaint are the reasonably foreseeable result of such conduct, the conduct does not constitute an "accident" and does not give rise to an "occurrence" covered by the Policies.

32. Further, the Policies only cover "bodily injury" or "property damage" that occurs during the policy period and was not known to have occurred prior to the policy period.  Based on the allegations in the Complaint, it appears that some or all of the injuries alleged may have occurred prior to the inception of the Policies and may have been known to CARD prior to one or more policy periods.

33. The Policies contain an endorsement providing that they do not afford any personal and advertising injury coverage under Coverage B.  Accordingly, Coverage B does not apply.

34. Even if any of the injuries alleged in the Complaint did constitute "bodily injury" or "property damage" (which Ohio denies), several exclusions would apply to exclude coverage for the Underlying Action.

35. Exclusion f(2) excludes coverage for any "[c]laim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, 'pollutants.'"  The Policies define "pollutant" to mean, in part, "any solid, liquid, gaseous or thermal irritant or contaminant…"  BNSF filed the Complaint on behalf of the United States government alleging injuries arising out of CARD's response to, or assessment of the effects of, asbestos-contaminated vermiculite, a solid irritant or contaminant.  Therefore, even if the allegations in the Complaint did trigger the insuring agreement of the Policies, exclusion f(2) would exclude coverage for the claims and damages alleged in the Complaint.

36.  The Policies are modified by Endorsement Form CG 88 86 12 08 entitled "Exclusion – Asbestos Liability."  That Endorsement excludes coverage for any loss arising out of any "[c]laim or 'suit' by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of asbestos, asbestos contained in goods, products or materials, asbestos fibers or asbestos dust."  BNSF filed the Complaint on behalf of the United States government alleging injuries arising out of CARD's response to, or assessment of the affects of, asbestos fibers or dust.  Therefore, even if the allegations in the Complaint did trigger the insuring agreement of the Policies, the Asbestos Liability exclusion would exclude coverage for the claims and damages alleged in the Complaint.

37.  Policies in effect from the policy period incepting on May 27, 2013 through the Policy period ending on May 27, 2022 contain an endorsement entitled "Exclusion – Services Furnished by Health Care Providers."  That endorsement excludes coverage for injury "arising out of," among other things, "[m]edical, surgical, dental, X-ray or nursing service, treatment, advice or instruction…"  The injuries alleged in the Complaint arise out of, in part, CARD's diagnostic criteria for ARD.  Therefore, even if the allegations in the Complaint did trigger the insuring agreement of the Policies, the exclusion for Services Furnished by Health Care Providers would exclude coverage for the claims and damages alleged in the Complaint.

38.  For these reasons, Ohio has no duty to defend or indemnify CARD under the Policies with respect to the Underlying Action.

## V. SECOND CAUSE OF ACTION

### Implied Contract - Recoupment of Defense Costs

39.     Ohio incorporates by reference all allegations set forth in paragraphs 1 through 38 as if fully set forth herein.

40.     In offering to provide a defense under a reservation of rights, Ohio explicitly reserved the right to recoup defense costs in the event it was determined the Policies did not afford coverage.

41.     CARD accepted Ohio's offer to provide a defense subject to the reservation of rights, including the right to recoup defense costs.

42.     CARD's acceptance of the defense provided for its benefit created an implied contract authorizing Ohio to recoup defense costs incurred while defending under a reservation of rights if it was ultimately determined that the Policies did not provide coverage.

43.     Ohio never had an obligation to defend or indemnify CARD pursuant to the Policies.  Accordingly, Ohio is entitled to recoup its fees and costs incurred in providing a defense under a reservation of rights.

### REQUEST FOR RELIEF

WHEREFORE, Ohio prays for judgment in its favor and against Defendants as follows:

A.     Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio has no duty to defend or indemnify CARD in the Underlying Action;

B.     Declaratory relief pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201, that Ohio may withdraw the defense currently being provided in the Underlying Action;

C. Reimbursement and/or recoupment of fees and costs incurred by Ohio in providing CARD a defense under a reservation of rights; and

D. Such other and further relief as the Court deems just and appropriate.

DATED: July 21, 2021.

BULLIVANT HOUSER BAILEY PC

By */s/ Jared F. Kiess*
Jared F. Kiess

Attorneys for Plaintiffs

4828-0062-8721.1

925 Fourth Avenue, Suite 3800
Seattle, Washington 98104
Telephone: 206.292.8930